Mr. Chief Justice Sharkey
delivered the opinion of the court.
This proceeding was instituted, for the purpose of charging the defendants, as executors de son tort of one Jones, against whom, in his lifetime, the plaintiffs had recovered a judgment for 91400.
No question has been raised on'the pleadings; but the parties have presented the case on its merits, and so we shall consider of it.
By the first bill of exceptions it appears, that the plaintiffs proved that the defendants sold thirfy-one negroes, which were the property of Jones in his lifetime, for the sum of $9650. The judgment of the plaintiffs against Jones was also read ; it was recovered on the 30th of November, 1839. To justify the *393 sale of the negroes, the defendants read in evidence a mortgage, or contract of indemnity, executed by Jones, on the 16th of November, 1839, conveying to them the negroes sold, to save them harmless from two supersedeas bonds, which they had signed, as sureties of Jones. They also proved, that these writs of supersedeas had been discharged at the November term, 1839, of the circuit court. The bonds were also read in evidence, and they proved, further, that Jones put them in possession of the slaves, and verbally authorized them to sell, in case they became liable on the bonds. To so much of the evidence, there seems to have been no objection. They also introduced, and were permitted to read, two deeds of trust, executed by Jones, to Littlejohn, to secure the payment of certain debts therein mentioned, covering part of the same property,, conveyed by the mortgage. One of these deeds was executed in Tennesse, on the 20th of April, 1839, and the other in Yazoo county, in this state, on the 15th of November, 1839, being an exact copy of the one executed in Tennessee. Both the mortgage to defendants, and the deed of trust to Littlejohn, were recorded on the day of their execution. The plaintiffs’ counsel objected to the introduction of the deeds of trust; but the objection was overruled. The judgments to supersede the executions, on which the defendants became Jones’s sureties, were also read. It was also shown that the value of the negroes included in the mortgage, which were also covered by the deed of trust, was $2750; and it was further proved, that the defendants sold the slaves after Jones’s death, and out of the proceeds paid off the judgments on which they had become liable, leaving a surplus in their hands at the time of suit brought, of $1500. There had been no other intermeddling with the property of Jones, except that above-mentioned.
On this state of facts, the plaintiffs’ counsel requested the court to charge the jury — 1st. That if they believed the defendants paid off the mortgage executed by the decedent to them, with the effects or money of the decedent, that it was such an intermeddling with his estate, as would charge them as executors de son tort, and they must find for the plaintiffs. 2d. *394 That if they believed defendants took and sold thirty-one slaves, after the death of Jones, which had belonged to him, although said slaves may have been mortgaged and delivered' to them by Jones, and by such sale came into the possession of a sum of money equal to the plaintiffs’ demand, over and above the amount of the mortgage, and had said money at the time suit was brought, they are liable to that extent to the plaintiffs; which instructions the court refused to give, but at the request of defendant’s counsel, charged the jury as follows, to wit, 1st. That if Jones mortgaged the slaves, and other property sold, as a security to the defendants against their liability for him, on the supersedeas bonds, and put them in possession of the property, and that the writs of supersedeas were discharged, and the defendants had become liable, a sale of the property, after such liability, will not in law constitute them executors de son tort. 2d. That if defendants took and sold the property, to indemnify themselves as sureties for Jones, and sold the same for more than their liability, the surplus in their hands must be appropriated to the mortgages made on the same property, before the date of the plaintiffs’ judgment, and if such surplus is not sufficient to pay the mortgages, the plaintiffs are not entitled to recover. To the refusal to give the charges asked for the plaintiffs, and to the giving of those asked for defendants, the plaintiffs’ counsel excepted. A separate bill of exceptions was also taken to the admission of the deeds of trust to Littlejohn.
The plaintiffs now assign as error, 1. That the court erred in admitting the deeds of trust to be read in evidence. 2. That the court erred in refusing the first and second charges asked for the plaintiffs, and 3. That the court erred in giving the first and second charges asked for defendant.
By adverting to a few of the leading principles laid down by elementary writers as to what will make one executor in his own wrong, and also to some of the adjudged cases which bear a resemblance to this, we shall be able to keep in view the tests by which the decisions complained of are to be tried. Acts which are calculated to induce a belief that the actor is execu *395 tor; acts which are characteristic of the .office of executor, except a few which result from motives of benevolence or friendship, are calculated to fix liability. The instances given are living in the house of the deceased, carrying on his trade, paying off mortgages with his effects or paying other debts or legacies out of his effects; suing for, recovering and releasing debts, &c. Toller, 37. If a person who has meddled, has money belonging to the deceased at the time the suit is brought, he is said to be liable. 3 Bacon, 444. The case of Padget v. Priest & Porter, 2 Term Rep. 97, is a leading case. At the request of the deceased, one of the defendants sent his servant to attend to the beer cellar of the deceased, and he continued to sell beer and pay the money to Porter, after the death of the owner. They had also been sued by the administrator and paid some money into court, and these circumstances were held sufficient to make them liable. In addition to selling the goods of the intestate, it appeared that they had money of his in their hands at the time of suit brought, which circumstance was held conclusive. But it must be borne in mind that there was in that case, an administrator, who was entitled to recover the money.
In the case of Edwards v. Harben, 2 Term Rep. 387, the decedent had made an absolute bill of sale to Harben, of certain goods to secure a debt, but did not deliver possession. After his death Harben took the goods, it having been agreed that he should take the goods and sell them within fourteen days, if the money should not be sooner paid. He was held liable, but it was on the ground lhat the bill of sale, unaccompanied by possession, was fraudulent, and void as to creditors. If he had taken possession of the goods at the lime of making the bill of sale, and Held them until the time allowed for the payment had elapsed, and then sold, there-'is every reason to believe the decision of the court would have been different, for the decision turned exclusively on the question of fraud. A similar doctrine to this was announced in the decision of the court in the case of Horsey v. Smithson, 6 Harris & Johnson, 61.
Some of the courts in the United States have gone much *396 further. Thus, in the case of Lyman v. King, 1 Root, 104, it was held that a conveyance void against creditors, was still sufficient to exempt the defendant from liability as executor de son tort, he having taken possession of the property under such deed, after the death of the owner. It was said that even a colorable title would excuse. So too, in the case of Turner v. Child, 1 Devereux, 25, it was held that a mere colorable right is sufficient to discharge. These two cases, however, seem to be inconsistent with the English doctrine, and the principle of them is also opposed by the decision in the case of Howell's Administrator v. Smith, 2 McCord’s Rep. 516, in which case the defendant had colorable right, having been named in a paper, supposed to be a valid will.
In the case of Debesse v. Napier, 1 McCord, 106, the deceased had goods in the hands of a factor for sale, and other goods were about to be placed in his hands. The factor had a claim for charges or commissions on the goods. The deceased drew an order in favor of a third person for the whole proceeds of the goods, after the factor should be -paid. The order was accepted, and after the death of the drawer the factor sold the goods, and paid the proceeds as directed by the order, and it was held that he had a right to do so. This case places the question upon its true ground, as we conceive, to wit, a change of property. It was held that the order was a transfer of the goods, and divested the right of the deceased.
In making an application of these principles to the case before us, we shall depart from the order in which the errors have been assigned, and inquire, in the first place, into the decisions of the court in refusing the charges asked for the plaintiffs, and in giving those asked by the defendants.
1. Was the court right in refusing to charge the jury, that if they believed the defendants paid off the mortgage executed by the deceased to them, with the money or effects of the deceased, that it was such an intermeddling with the estate as would make them liable as executors de son tort 7 This charge seems to have been framed with a view to the language held b,y elementary writers. It may be law, and still the court pray *397 have been justified in refusing it. Charges must be pertinent to the state of case before the conrt. The evidence must lay a foundation for the charge asked, or the court may refuse to give it. The court is to charge on the law in reference to the facts. It is said that paying off mortgages of the deceased with his money, is such an act as to constitute an executor de son tort. In holding that the court was not bound to give this charge under the state of the case, it becomes necessary to show its inapplicability. In November, 1839, it seems the defendants became sureties in two bonds for Jones. To indemnify themselves they took a mortgage on slaves. A few days after giving the bonds their liability was fixed by the dismissal of the writs of supersedeas. In 1S40, after Jones’s death, they sold the ne-groes and paid off the judgments. Now if their right to this property had become absolute before Jones’s death, their right to sell cannot be questioned. A mortgage of personal property vests the right in the mortgagee, subject to be defeated on the performance of the condition, and if the condition be not performed the right becomes absolute. 1.Pickering, 389. 1 Powell on Mortgages, 3. The condition in the mortgage was to save the defendants harmless. Their liability was unalterably fixed a few days after the mortgage was given ; of course their right became absolute. There is a circumstance in this case, and it is by far the most important in it, which has been entirely overlooked by counsel. It is this; when the mortgage was made, Jones delivered the negroes to^the mortgagees. They held then the property by a title which had become absolute, to which was joined the possession of the property; what more was necessary to make their right perfect? As in the case qf Debesse v. Napier, there was a change of ownership. Having the possession, of personal property it was not necessary for them to file a bill to foreclose, as it would have been on a'mortgage of land. The doctrine seems to be now settled, that on mortgages of personal property a bill to foreclose is unnecessary. Lockwood v. Ewer, 2 Atkyns, 303. Hart v. Ten Eyck, 2 John. C. Rep. 100. It was perhaps necessary that they should have given notice to the mortgagor to redeem; in ordinary cases it *398 would be so; but there is a good reason for excusing them for failing to do so in the present instance, for the mortgagor was dead, and we have no evidence that there was a legal representative. A year had elapsed from the time the condition of the mortgage became forfeited, and under such circumstances it is but reasonable that they should have had a right to sell, even although there had been no notice to redeem. But, for aught that appears, they may have complied with the law in this particular. But there is another circumstance deserving of notice, which is also calculated to protect the defendants. It seems that Jones had not only given possession of the negroes to the defendants, but that he also gave them express permission and direction, by parol, to sell, in case they should become liable. The validity of such parol agreement or direction, has not been questioned. It is similar to the parol agreement made in the case of Edwards v. Harben, and that was not questioned, but the case placed upon a different ground. At what time Jones died does not distinctly appear, yet we may well presume that it was after the defendants had become liable on the bonds, which was in November, 1839, for on the 30th of the same month the plaintiffs recovered their judgment against him. According, then, to the true legal effect of Jones’s contract of indemnity or mortgage, he was divested of his right to the slaves before his death. But if there could be any doubt about that, the parol agreement was such as to entitle the defendants to sell as soon as they became liable,' They could not sell unless they were the legal owners, and such ownership was conferred by the contract. , What will constitute an executor de son tort, is a question of law. The court, then, in view of the defendants’ title to this property, was under no obligation to give the charge, for there was no evidence tending to show that any mortgage had been paid off with Jones’s money or goods. Nor was there any evidence, in truth, that any mortgage had been paid off. The defendants paid off two judgments. The mortgage constituted their title. If they had paid off that, out of other property of the estate, then the negroes would have become a part of the property of the estate. They are supposed by counsel to have *399 stood in the attitude of mortgagees ; if that was their condition, and they sold the mortgaged property as their own, this was not paying off the mortgage, but it was making it absolute; it was a foreclosure. Why, then, should the court have been asked to charge, in relation to the effect of paying off a mortgage, when, in'truth, none has been discharged? The whole contest in this case is, whether the mortgage conferred such a title as to justify their act. The record presents no such question as that attempted to be raised by the charge; no question as to the effect of paying off a mortgage of the deceased. The charge involved but an abstract question of law, which the court was right in refusing. The effect of the mortgage, as an instrument to pass title, was a question of law; what will discharge a mortgage is also a question of law. The court then was bound to know that the property was not Jones’s, for this wás purely a legal question. It was also bound to know that the act complained of was not a discharge of the mortgage, and until the plaintiffs had introduced- proof that some property or money of Jones’s had been appropriated, and a mortgage discharged, such a charge was not pertinent.
Second. Was the court right in refusing to charge the jury that if defendants took and sold thirty-one slaves after the death of Jones, which had belonged to him, although said slaves may have been delivered to them, and by such sale came into the possession of a sum of money, equal to the plaintiff’s demand, over and ¡^bove the amount of the mortgage, and had the money when the suit was brought, that they were liable? This charge is evidently based upon the decision in the case of Padget v. Priest, in which it was said that holding the money at the time the suit was brought, was conclusive in making the defendant liable. To the general proposition we assent, but we add this qualification; that if there be no one authorized to receive the money, then the mere act of holding the money is not of itself sufficient to make the holder liable, as executor in his own wrong. Now it does not appear that Jones appointed an executor, or that any one had administered. To whom, then, could the defendants pay it ? But the present case is distinguishable from *400 the one cited, iu another important particular. Porter & Priest had received the money by an act which was an illegal inter-meddling. We have endeavored to show that the act which brought the money into the hands of the defendants was a legal act; that it was by a sale of property which they were authorized to sell. To such a case, we do not think the doctrine of Padget v. Priest will apply, and the court, therefore, properly refused the charge.
Third. This brings ns, in the next place, to determine whether the court decided correctly, that if the negroes were mortgaged and put in possession of defendants, to secure them against the risk they had incurred, and if they had become liable, then the holding of the property, or the sale of it, either before or after the death of Jones, was legal. This question.is fully answered by the remarks already made on the first charge refused. We have endeavored to show that the contract amounted to an actual transfer of property, subject only to be defeated by the indemnity of the defendants, and if they had been damni-fied, that then the title became absolute. We have seen, from the cases cited, that where a change of property has taken place, that a disposition of such property will not create a liability. We have also seen that a mortgage of personal property is essentially different from a mortgage on land. The mortgage passed to the defendants the title to the property, subject to the condition that Jones would save them, harmless. If he failed in this, then their title became unconditional. The charge of the court was strictly in accordance with what we have endeavored to establish as the law of the case.
Fourth. In giving the next instruction the court held that the surplus money in the hands of the defendants, should be appropriated in discharge of the deed of trust to Littlejohn, which covered a part of the property sold, and which was a prior lien to the date of the plaintiff’s judgment. As a general rule a junior lien entitles the holder to the residue of the encumbered property, after an older lien has been satisfied. In equity the junior claimant would be entitled to the surplus of money arising from a sale under the older lien. But in addition to this *401 general principle, there is an additional reason which cannot be overlooked in the present case. The mortgage contains this condition, to wit; “And when the said Daniel W. Hendricks and Jesse Alsop shall have been -released or discharged from their liability, on account of having signed said bonds, then and in that case they will release to Joseph B. Kennon and Joseph Littlejohn, the negroes which have been conveyed to them by the said William Watts Jones, but which were, nevertheless, subject to said creditors.” The superseded judgments were older liens than either of the conveyances. The deed to Littlejohn was older than the mortgage. The effect of the mortgage was to protect the lien created by the deed of trust, and this will serve to explain the reason for requiring the defendants to release to Kennon and Littlejohn. .Independent of their older lien, the mortgage expressly directed the defendants to assign or release the property contained in the deed of trust, to Kennon and Littlejohn, after the liability of defendants should be discharged. The trustees were then doubly protected. They held a lien which they were entitled to enforce in a court of equity, and they had a condition in the mortgage in their favor, by which the mortgagees were expressly directed to release to them.' Supposing then the sale to have been legal, it cannot be doubted as to whom the surplus belonged. The trust creditors were the true owners. It would have been competent for them to have filed a bill to enjoin the payment of it over to Jones himself. There is, therefore, no error in this charge.
Lastly. The only remaining-question is as to the propriety of admitting the deeds of trust to be read in evidence. The deed of trust from Tennessee is objected to, on the ground of a defect in the proof of its execution. This point we need not decide, since the one executed in Yazoo county is a literal copy, and proves everything that could have been established by both deeds. We cannot doubt but what it is competent for a defendant, in a controversy of this sort, to show that the property with which he is charged with intermeddling, was not the property of the estate. But suppose the counsel should be correct in saying that defendants, by receiving a conveyance on the 16th *402 of November, thereby acknowledged the property to be in Jones, and cannot now controvert it, yet it must be remembered that there is a surplus fund, which is claimed by plaintiffs. By the deeds of trust, it is shown that this fund does not belong to Jones's estate, but tothe trustees, to whom the' defendants are liable for it; surely it is competent for them to protect themselves by showing the true ownership. As to this surplus, the deed of trust was clearly admissible. By it the money was shown not to belong to-Jones’s estate, and the plaintiff’s right to recover defeated, so that the deed was properly admitted. We think, therefore, that none of the errors are well assigned, and that the judgment must be affirmed.